**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PIERCE ROBERTSON, RACHEL GOLD, SANFORD GOLD, RAHIL SAYED, CHRISTOPHER EHRENTRAUT, TODD MANGANIELLO, DAN NEWSOM, WILLIAM AYER, ANTHONY DORN, DAMECO GATES, MARSHALL PETERS, and EDWIN GARRISON, on behalf of themselves and all others similarly situated, | Case No. 23-mc-24 |
| | (Case No. 22-cv-22538-RKA) |
| | (U.S. District Court for the Southern District of Florida) |
| Plaintiffs, | |
| v. | January 26, 2023 |
| MARK CUBAN and DALLAS BASKETBALL LIMITED d/b/a DALLAS MAVERICKS | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF SULLIVAN & CROMWELL LLP'S MOTION TO QUASH OR FOR A PROTECTIVE ORDER**

Sullivan & Cromwell LLP ("S&C") respectfully moves pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c)(1) to quash the subpoena served on S&C on December 29, 2022 by the plaintiffs in *Robertson* v. *Cuban*, No. 22-cv-22538 (S.D. Fla. filed Aug. 10, 2022).

## PRELIMINARY STATEMENT

S&C—a private law firm with its primary office in this District—brings this motion to forestall enforcement of the improper and harassing subpoena (the "Subpoena") directed to it by Plaintiffs in the underlying action filed in the Southern District of Florida.  Plaintiffs in that action, investors in products sold by cryptocurrency companies Voyager Digital Ltd. and Voyager Digital LLC (collectively, "Voyager"), assert claims stemming from alleged investment losses against third parties who allegedly marketed Voyager products (the "Defendant Brand Ambassadors").  S&C has no involvement in the underlying litigation (the "Voyager Action").  It is not a party to the action, does not represent any party to the action, and has never represented either Voyager or any Defendant Brand Ambassador.  Plaintiffs nonetheless served the Subpoena on S&C seeking documents and Rule 30(b)(6) deposition testimony concerning whether certain cryptocurrency accounts and tokens offered by Voyager and a separate cryptocurrency company, FTX Trading Ltd., constituted securities that should have been registered with the U.S. Securities and Exchange Commission ("SEC").  The Subpoena is improper and should be quashed in its entirety for at least four reasons.

*First*, Plaintiffs are attempting a textbook fishing expedition.  S&C has no reason to believe that it possesses any information responsive to the Subpoena.  There is no reason why S&C, which has never represented Voyager or the Defendant Brand Ambassadors, would have information about whether Voyager products constitute securities as a matter of law.  Although S&C has represented FTX in certain particular matters since July 2021, including FTX's pending

bankruptcy proceeding, the contours of S&C's prior unrelated work for FTX are reflected in detailed public declarations, as S&C has informed Plaintiffs multiple times. Those disclosures do not identify any representations concerning whether the cryptocurrency accounts or tokens referenced in the Subpoena constitute securities.

*Second*, the information requested in the Subpoena is irrelevant to Plaintiffs' claims. The Subpoena (i) seeks information regarding products sold by FTX, despite the fact that FTX is not a defendant in the Voyager Action and the operative complaint ("Complaint") does not even mention any FTX products; (ii) seeks information regarding a Voyager token that similarly is never mentioned in the Complaint; (iii) seeks communications between S&C and *other non-parties* to the Voyager Action (including "any state or federal entities" and "any member of the public"), which have no imaginable bearing on the conduct of the parties to the case; and (iv) seeks information regarding a pure question of law—whether the products at issue constituted securities—that the court in the Voyager Action will answer itself, without reference to any opinion from a non-party law firm on the matter.

*Third*, the Subpoena seeks information that is obviously privileged. The Subpoena in fact expressly targets privileged communications, seeking S&C's opinions regarding securities law questions and demanding disclosure of S&C's communications with its client FTX.

*Fourth*, the Subpoena is unduly burdensome and harassing. Because Plaintiffs have no good-faith basis to believe that S&C possesses any responsive information—and multiple reasons to believe that S&C has no such information—S&C should not be put to the expense of conducting extensive searches in order to prove the negative. Further, Plaintiffs have already demonstrated a belligerent approach to enforcing the Subpoena, repeatedly threatening to appear at S&C's offices for a deposition notwithstanding S&C's objections and asserting that they intend to question

S&C's representative regarding issues arising in the FTX bankruptcy proceeding with no apparent connection to the matters identified in the Subpoena.

These defects amply demonstrate S&C's entitlement to relief.  The Court should grant this motion and quash the improper Subpoena in its entirety.

## BACKGROUND

### A.      The Voyager Action and the Subpoena.

S&C is an international law firm with its principal place of business in New York, New York.  On December 29, 2022, the Moskowitz Law Firm served the Subpoena on S&C on behalf of the plaintiffs in the Voyager Action, a litigation pending in the Southern District of Florida in which S&C has no involvement.  Plaintiffs in the Voyager Action, investors in "Earn Program Account[s]" ("EPAs") offered by Voyager, seek damages stemming from losses that they allegedly suffered as a result of their Voyager investments.  (Ex. A (Am. Compl.) ¶¶ 29-31.)  Rather than suing Voyager itself (which is undergoing bankruptcy proceedings), Plaintiffs name as defendants the Defendant Brand Ambassadors, Mark Cuban and the Dallas Mavericks, who allegedly "promoted" Voyager products.  As relevant here, Plaintiffs allege that (i) the EPAs constituted securities that Voyager failed to register with the SEC, and (ii) the Defendant Brand Ambassadors assisted in Voyager's supposedly unlawful sale of those alleged securities.  (*Id.* ¶¶ 1, 31.)

S&C has no apparent connection to the Voyager Action.  It is not a party to the action and does not represent any party to the action.  Nor has S&C *ever* represented either Voyager or any of the Defendant Brand Ambassadors.  Plaintiffs nonetheless served the Subpoena on S&C, seeking documents and Rule 30(b)(6) deposition testimony concerning whether the EPAs or Voyager's "native cryptocurrency exchange token," known as VGX, "constituted a security required to be registered with the S.E.C." or "were exempt from registration under the safe harbor provision of Regulation D of the Securities Act."  (Ex. B ¶ 1.)  The Subpoena also seeks documents

and corporate testimony concerning whether products offered by a *different* group of cryptocurrency companies—FTX Trading Ltd. and West Realm Shires Services Inc. d/b/a FTX US (together with their affiliates, "FTX")—constituted securities, despite the fact that Plaintiffs do not allege any claims against FTX or its "promoters."[1]

In total, the Subpoena includes five "Deposition Subjects" and five "Document Requests" seeking information concerning four cryptocurrency products:  EPAs, VGX, "Yield-Bearing Accounts" ("YBAs") offered by FTX, and FTX's "native cryptocurrency exchange token," known as FTT (together, the "Products").  The Subpoena principally demands that S&C produce and testify to "[a]ll Documents or Communications" concerning whether any of those Products constitutes a security, including any such communications between S&C and each of the following entities:  (i) FTX; (ii) Voyager; (iii) "any federal or state entity"; (iv) "any investor, consumer, or member of the public"; or (v) "any Brand Ambassador of FTX or Voyager."  (Ex. B ¶¶ 1-4.)  The Subpoena further seeks "[a]ll documents authored by [S&C], including but not limited to legal memorandums, white papers, electronic correspondence, and letters to third parties," regarding whether any Product constituted a security.  (*Id.* ¶ 5.)  The Subpoena requests are reflected in full in Exhibit B accompanying this motion.[2]

---

[1]  Any claims against any FTX debtor would be precluded in any event pursuant to 11 U.S.C. § 362(a).

[2]  On the same day Plaintiffs served the Subpoena, their counsel served a second subpoena on S&C on behalf of the plaintiffs in *Norris* v. *Singh*, 2022-022900-CA-01, an action filed in Florida state court in which S&C similarly has no involvement.  The claims in the *Norris* action are analogous to those lodged in the Voyager Action.  The *Norris* plaintiff asserts securities-law claims against alleged FTX "brand ambassadors" relating to the sale of YBAs.  (*See* Compl., *Norris* v. *Singh*, 2022-022900-CA-01 (Fla. 11th Jud. Cir. Dec. 2, 2022).)  S&C is not a party to the *Norris* action, does not represent any party to that action, and has never represented any "brand ambassador" named in that action.  S&C does not seek relief regarding the improper *Norris* subpoena through this motion and will address that subpoena separately.

**B.**     **S&C's Representation of FTX in Connection with Matters Unrelated to the Discovery Sought in the Subpoena.**

Notwithstanding that the Voyager Action does not concern FTX, the purported basis for issuance of the Subpoena appears to be S&C's prior representation of FTX.  S&C currently serves as counsel to the FTX debtors in their pending Chapter 11 proceedings, filed on November 11, 2022 and pending in the United States Bankruptcy Court for the District of Delaware.  *See In re FTX Trading Ltd.*, 22-11068 (D. Del. Bankr.).  Plaintiffs appear to have targeted S&C for discovery because of its work on behalf of FTX pre-bankruptcy that included representing one of the FTX debtors in connection with a contemplated (but ultimately unconsummated) purchase of Voyager assets through the Voyager bankruptcy proceedings.  (*See* Ex. C ¶ 48; Ex. D (Jan. 12, 2023 email from Plaintiffs to S&C asserting that Plaintiffs are "writing to you three [recipients regarding the Subpoena] because you were involved in representing FTX USA in the Voyager asset purchase").)  As Plaintiffs should be well aware, however, that tenuous connection in no way renders S&C subject to discovery in the Voyager Action.

Moreover, in connection with the FTX debtors' motion to retain S&C in the FTX bankruptcy proceeding, S&C publicly filed extraordinarily detailed declarations describing the scope of each matter that it worked on for FTX prior to the petition date.  (Ex. C ¶¶ 40-54; *see also* Ex. E.)  Those declarations (the "S&C Declarations") do not suggest in any way that S&C ever represented FTX concerning the issues identified in the Subpoena.  The S&C Declarations do not reflect any representations concerning either (i) whether the YBAs, the EPAs, VGX, or FTT constituted securities, or (ii) any matters regarding the Defendant Brand Ambassadors or other cryptocurrency product promoters.

**C.**     **S&C's Objections to the Subpoena and Plaintiffs' Threatening Correspondence Regarding Enforcement.**

Plaintiffs served the Subpoena on December 29, 2022, and reached out to counsel at S&C

on January 12, 2023.  S&C thereafter attempted to gain clarity and reserve its rights, but Plaintiffs'

counsel responded on January 17, 2023 that "the deposition is set for January 27th at 10am," *i.e.*,

the date noticed in the Subpoenas.  (Ex. D.)

On January 20, 2023, Plaintiffs' counsel again declared that "we are set to take your

deposition on January 27th, starting at 10am" and "will be at your offices in NY at 9am."  (*Id.*)

Counsel also asserted their intention to question S&C's representative at the deposition regarding

a widely publicized declaration submitted in the FTX bankruptcy proceeding that has no

connection to any topic identified in the Subpoena.  (*Id.*)

S&C responded, also on January 20, that "no representative of Sullivan & Cromwell will

be appearing for deposition next week" and that neither the Subpoena nor Plaintiffs' related

correspondence

> provide any justification as to why discovery from Sullivan & Cromwell would be
> appropriate in any event, or why you believe we would have any relevant
> information.  Sullivan & Cromwell has never represented Voyager and, as detailed
> in the voluminous public disclosures in connection with our recent retention in the
> FTX Debtors' chapter 11 cases, Sullivan & Cromwell has not represented any FTX
> entity on matters at issue in your litigation.

(Ex. D.)

Undeterred, Plaintiffs responded by reiterating their threat to "arriv[e] at your offices in

NY on Friday at 9am, unless you have Judge Reid in our Voyager litigation quash our subpoena."

On January 24, 2023, Plaintiffs sent S&C instructions to access a remote deposition on January

27.  (Ex. F.)

On January 25, 2023, S&C served formal responses and objections to the Subpoena.

(Ex. G.)  Those responses reiterated S&C's objections to producing a witness or conducting any

document searches.  S&C objected to each request in the Subpoena principally on the grounds that

(i) Plaintiffs lack any basis to believe that S&C possesses responsive information; (ii) as a result,

forcing S&C to search for responsive documents or proffer a witness to testify would be unduly burdensome and harassing; (iii) the information Plaintiffs seek is irrelevant to the Voyager Action; and (iv) Plaintiffs seek information that, if it existed, would largely be privileged.  In addition to serving those objections, S&C now has no choice but to seek protection from this Court in light of Plaintiffs' belligerent insistence that they will appear at S&C's premises on January 27 over S&C's repeated objection.

## LEGAL STANDARD

Under Rule 45, the Court "for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  With respect to the Subpoena, "the district where compliance is required" is the Southern District of New York, where S&C resides.  *See* Fed. R. Civ. P. 45(c)(2)(A) (providing that subpoena must seek compliance "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person"); *Imig, Inc.* v. *Steel City Vacuum Co.*, 2023 WL 141202, at *1 (2d Cir. Jan. 10, 2023) (noting that subpoenas issued from Eastern District of New York sought compliance from Pittsburgh-based respondent in Pittsburgh, "presumably because . . . [the issuing party] understood Rule 45(c) to require the place of compliance to be within 100 miles of where . . . [respondent] resided and/or regularly transacted business").

On a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."  *Macklin* v. *Sparta Insurance Co.*, 2022 WL 4592803, at *15 (S.D.N.Y. Sept. 30, 2022).  Only if the issuing party makes that showing, the movant must then "demonstrat[e] an undue burden."  *Id.* at *15.

Rule 26 permits the subject of a subpoena for testimony to seek a protective order "in the court for the district where the deposition will be taken."  Here, given S&C's residence in New

York, any deposition of S&C would proceed in this district.  *See* Fed. R. Civ. P. 45(c)(2)(A).  This Court thus "may, for good cause, issue an order to protect" S&C "from annoyance, embarrassment, oppression, or undue burden or expense" resulting from the Subpoena.  Fed. R. Civ. P. 26(c)(1).  Rule 26 vests the Court with broad discretion to fashion appropriate relief, including by prohibiting the requested discovery altogether or modifying the scope of disclosure.  *Id.*

Here, where Plaintiffs attempt to send S&C on a fruitless search for information they have no reason to believe it possesses—and where such information would in any event be irrelevant and/or privileged if it existed—S&C is plainly entitled to relief under either of these standards.

## ARGUMENT

### I.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE PLAINTIFFS LACK ANY GOOD-FAITH BASIS TO EXPECT THAT S&C POSSESSES ANY RESPONSIVE, NON-PRIVILEGED INFORMATION.

To satisfy their burden on a motion to quash, Plaintiffs must show that "the discovery sought is more than merely a fishing expedition."  *Macklin*, 2022 WL 4592803, at *14.  Here, however, a fishing expedition is precisely what Plaintiffs are trying to accomplish.  They have no good-faith basis to believe that S&C would possess the information sought in the Subpoena regarding Products sold by Voyager.  S&C has never represented Voyager or any Defendant Brand Ambassador that worked for Voyager.  Nor is S&C a party to the Voyager Action or counsel to any party in that action.  There is no reason to expect that a search of S&C's records would nonetheless yield documents regarding whether the Voyager Products constituted securities.

Nor do Plaintiffs have any reason to believe that S&C would possess responsive information concerning the FTX Products.  In fact, there is ample reason to expect that S&C does *not* possess any such information.  The publicly available S&C Declarations do not describe any engagement of S&C by FTX in connection with (i) any Products or (ii) any matters regarding the Defendant Brand Ambassadors or other cryptocurrency product promoters.  (Ex. C ¶¶ 40-54.)

It would be unduly burdensome to force S&C to conduct a lengthy search or offer witness testimony to prove these negatives.  *See Certain Underwriters at Lloyd's* v. *Nat'l R.R. Passenger Corp.*, 318 F.R.D. 9, 15 (E.D.N.Y. 2016)("[W]hen the burden on the responding party outweighs the likelihood that non-duplicative responsive documents will be found, discovery may be deemed disproportionate, within the meaning of Rule 26(b)(1).").  Having served a non-party subpoena with no basis to believe that the respondent would possess the information sought, Plaintiffs are entitled to nothing, and the Subpoena should be quashed.

## II. THE COURT SHOULD QUASH THE SUBPOENA BECAUSE THE DISCOVERY IT SEEKS IS IRRELEVANT TO PLAINTIFFS' CLAIMS.

Under no circumstances could Plaintiffs demonstrate that the information sought by the Subpoena is "relevant and material" to their claims, as they must to survive this motion.  *See Macklin*, 2022 WL 4592803, at *15.

*First*, there is no conceivable basis for Plaintiffs to seek discovery regarding the Products offered by FTX.  The Voyager Action concerns only *Voyager* Products.  Plaintiffs do not allege any claims concerning FTX Products, and neither FTX nor its "brand ambassadors" are named as defendants in the action.  Indeed, the Complaint never mentions the terms "Yield-Bearing Account," "YBA," or "FTT," and mentions "FTX" only twice, in passing references unrelated to whether the company's products were securities.  (Ex. A ¶¶ 5, 44.)  Every request in the Subpoena is thus deficient to the extent that it seeks information regarding the FTX Products.

*Second*, the Complaint is similarly devoid of allegations or claims regarding Voyager's "native cryptocurrency exchange token" VGX.  Plaintiffs do not assert that VGX was an unregistered security or that the Defendant Brand Ambassadors promoted sales of VGX.  The Complaint does not state a claim based on VGX or even mention the term "VGX."  Discovery

regarding VGX thus has no bearing on Plaintiffs' claims, and every request in the Subpoena is deficient to the extent that it seeks information concerning VGX.

*Third*, three of the five Deposition Subjects and three of the five Document Requests seek information regarding communications between S&C and other non-parties to the Voyager Action. Specifically, Deposition Subject No. 1 and Document Request No. 1 seek information regarding communications between S&C and "any representatives of the FTX Entities or Voyager Entities" concerning whether the Products constitute securities; Deposition Subject No. 2 and Document Request No. 2 seek such communications between S&C and "any federal or state entity"; and Deposition Subject No. 3 and Document Request No. 3 seek such communications between S&C "any investor, consumer, or member of the public." Hypothetical communications between a non-party law firm and other non-parties to the Voyager Action cannot be probative of whether the Brand Ambassador Defendants engaged in any violations of law. *See Morelli* v. *Alters*, 2020 WL 6508858, at *6 (S.D.N.Y. Nov. 5, 2020) ("sweeping" request for "information of tangential relationship to Plaintiff's claims" was "the epitome of the classic 'fishing expedition'").[3]

*Fourth*, the primary issue on which Plaintiffs seek discovery—whether the Products were securities that should have been registered with the SEC—is a pure question of law to be decided by the court. That question does not turn on S&C's view of securities law or any advice communicated to FTX or any other party.

---

[3] To the extent that Plaintiffs speculate that advice provided by S&C might have been conveyed to the Brand Ambassador Defendants, then the Subpoena seeks information that is available from the Brand Ambassador Defendants themselves, and Plaintiffs should seek discovery from them directly. *See Macklin*, 2022 WL 4592803, at *15 (considering whether information is "available from any other source" in deciding motion to quash).

III.   **THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IMPROPERLY SEEKS INFORMATION PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.**

The Subpoena fails for the independent reason that it blatantly attempts to invade (at a minimum) the attorney-client privilege.  Unlike the typical scenario in which discovery requests designed to elicit non-privileged information might incidentally capture a limited amount of privileged material, Plaintiffs appear to have specifically targeted privileged information for production.  Every Document Request and Deposition Subject in the Subpoena seeks disclosure of S&C's legal opinion about whether the Products "constituted . . . securit[ies] required to be registered with the S.E.C."  (*See* Ex. B (Deposition Subject Nos. 1-5; Document Request Nos. 1-5).)  Further, Document Request No. 1 and Deposition Subject No. 1 seek communications between S&C and its client FTX.  (*See* Ex. B (Deposition Subject No. 1; Document Request No. 1).)

Indeed, S&C's attorney-client relationship with FTX appears to be the sole reason why Plaintiffs sought discovery from S&C.  As Plaintiffs' counsel freely acknowledged in pre-motion correspondence, they selected S&C partners to contact about the Subpoena based on their "involve[ment] in representing FTX USA in the Voyager asset purchase."  (Ex. D (Jan. 12, 2023 Email; Jan. 17, 2023 Email).)[4]

Plaintiffs' abusive tactics are fatal to the Subpoena.  *See* Fed. R. Civ. P. 45(d)(3)(A) (providing that court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter"); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d

---

[4]  To the extent that Plaintiffs claim that certain Subpoena requests—for example, the requests for communications with "any investor, consumer, or member of the public"—seek non-privileged materials, any such materials would still be (i) highly unlikely to exist and (ii) irrelevant to the Voyager Action, for the reasons set forth above.  *See supra* Sections I–II.

Cir. 2003) (explaining that courts "resist[] the idea that lawyers should routinely be subject to broad discovery").  Where, as here, the primary objective of attorney discovery appears to be invasion of the privilege, these principles apply with extra force and courts in this District have readily granted relief to respondents.  *See Roseman* v. *Bloomberg L.P.*, 2016 WL 3866375, at *5 (S.D.N.Y. June 17, 2016) (granting motion for protective order where "the purpose of deposing the defendant's counsel is almost exclusively to elicit privileged communications and protected information"); *see also Estate of Ungar* v. *Palestinian Authority*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) (quashing subpoena directed to law firm based on "the excessive number of documents requested, the unlikelihood of obtaining relevant information, and the existence of attorney-client privilege for all documents").  The same result should follow here.

## IV.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IS UNDULY BURDENSOME AND HARASSING.

For the reasons discussed above, Plaintiffs cannot carry their burden to demonstrate that the information sought by the Subpoena is even minimally relevant, much less material, to their claims.  *See Macklin*, 2022 WL 4592803, at *15.  Plaintiffs' failure entitles S&C to an order quashing the subpoena, even without a demonstration of burden.  *See id.*  S&C nonetheless briefly sets forth Plaintiffs' attempts to burden and harass S&C in order to underscore S&C's need for relief.

"In determining whether a subpoena subjects a witness to undue burden, a court must 'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Macklin*, 2022 WL 4592803, at *15; *see also Cohen* v. *Group Health Inc.*, 2022 WL 4534552, at *3 (S.D.N.Y. Sept. 28, 2022) (recognizing "a special concern about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests").  S&C is plainly entitled to relief under that standard.  Plaintiffs served the

Subpoena without any good-faith basis to believe that S&C would possess responsive information. The S&C Declarations have since provided ample reason to believe that S&C does *not* possess such information.  Further, any responsive information would be irrelevant, privileged, or both.

"Demanding compliance" with the Subpoena thus would serve only to force S&C to conduct burdensome searches in order to confirm what the available data already suggests:  that relevant, non-privileged documents responsive to the subpoena are a null set.  Quashing the Subpoena, by contrast, would spare S&C needless burden and expense and protect against Plaintiffs' attempt to invade the attorney-client privilege.  *See Friedman*, 350 F.3d at 72 (noting that "the risk of encountering privilege and work-product issues" militates in favor of an undue burden finding).

Critically, any relief short of quashing the subpoena in its entirety is unlikely to protect S&C from undue burden and expense.  There is ample reason to expect that if permitted to proceed with any discovery, Plaintiffs will continue to seek impermissible discovery, including efforts to obtain information from S&C concerning any matter relating to FTX that piques their interest, even though it has no bearing whatsoever on the action they are pursuing in Miami.  Indeed, Plaintiffs have already attempted to do just that by asserting that they intend to question S&C's Rule 30(b)(6) representative about a declaration filed in the FTX bankruptcy proceeding that has no connection to the matters identified in the Subpoena.  (Ex. D (Jan. 20, 2023 email from A. Moskowitz to B. Glueckstein).)  That is exactly the type of harassment that Rules 26 and 45 seek to prevent.  *See Gov't Emps. Ins. Co.* v. *Lenex Servs., Inc.*, 2018 WL 1368024, at *10 (E.D.N.Y. Mar. 16, 2018) (quashing subpoena on harassment grounds).

## CONCLUSION

For the foregoing reasons, S&C respectfully requests that the Court enter an order quashing the Subpoena in its entirety.


Dated: January 26, 2023

Respectfully submitted,
  */s/ Stephen Ehrenberg*

Sharon L. Nelles
Stephen Ehrenberg
Beth D. Newton
Michael P. Devlin
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel:  (212) 558-4000
*nelless@sullcrom.com*
*ehrenbergs@sullcrom.com*
*newtonb@sullcrom.com*
*devlinm@sullcrom.com*

*Counsel for Movant Sullivan &*
*Cromwell LLP*